## Philadelphia County, Appellant, *v.* Sheehan.

*Constitutional law—Local and special laws—County affairs—Public officers—Salary—Register of wills—Act of July 21, 1913, P. L. 878—Estoppel.*

1. The Act of July 21, 1913, P. L. 878, fixing the salary of the register of wills in counties having a population of one million five hundred thousand at $10,000 a year, and providing that all fees or commissions of every kind received for services performed. either for the county, State, or otherwise, shall be paid into the

county treasury, although general in form, is a local statute regulating county affairs, and therefore is in violation of Article III, Section 7, of the Constitution which prohibits the passage of any local or special law regulating the affairs of counties.

2. A statute applicable to counties only of a specified population will be construed to be local and special, where the subject matter of the statute has no relation to the population of the counties.

3. An officer who asserts the unconstitutionality of a statute fixing his salary and providing that all commissions and fees collected for services should be paid into the county treasury is not estopped from setting up such claim as a defense in an action brought by the county treasurer to recover the commissions, merely because he entered into an agreement with the county treasurer, to the effect that, pending the determination of the constitutionality of the statute by the courts, he should be paid his salary as fixed by the statute, and that the commissions should be deposited in a separate account and paid over or not, as the question of the constitutionality of the statute might be determined.

Reargued July 16, 1918.   Appeal, No. 368, Jan. T., 1918, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1916, No. 4693, entered upon a verdict for the defendant in the case of County of Philadelphia v. James B. Sheehan, Register of Wills.   Before BROWN, C. J., STEWART, FRAZER, MOSCHZISKER, WALLING and FOX, JJ.   Affirmed.

Assumpsit to recover commissions allowed register of wills for collection of State collateral inheritance taxes. Before AUDENRIED, P. J.

Verdict and judgment for defendant.   The court dismissed plaintiff's motion for judgment n. o. v.   Plaintiff appealed.

*Error assigned* was dismissal of plaintiff's motion for judgment n. o. v.

*Ira Jewell Williams,* for appellant.—The classification specified in the act is a proper classification: Allegheny County v. Stengal, 213 Pa. 493.

The collection of the collateral inheritance tax has nothing to do with counties or county officers, but with the State and its agents: Bartley v. Patton, 19 Philadelphia 496; Knisely v. Cotterel, 196 Pa. 614; In re Registration of Campbell, 197 Pa. 581; City v. McMichael, 12 Pa. Dist. Rep. 403; Philadelphia v. McMichael, 208 Pa. 297; Wheeler v. Philadelphia, 77 Pa. 338; Sugar Notch Borough, 192 Pa. 349.

The defendant is estopped to deny the constitutionality of the statute: Bidwell v. City of Pittsburgh, 85 Pa. 412; Dewhurst v. City of Allegheny, 95 Pa. 437; Ferson's App., 96 Pa. 140; Harrisburg v. Baptist, 156 Pa. 526; Trevorton Water Supply Co. v. Zerbe Township, 259 Pa. 31; Daniels v. Tearney, 102 U. S. 415.

*Joseph Gilfillan,* of *Graham & Gilfillan,* with him *Samuel M. Clement, Jr.,* for appellee.—The statute violates Article III, Section 7, of the Constitution: Wheeler v. Philadelphia, 77 Pa. 338; Scowden's App., 96 Pa. 422; Morrison v. Bachert, 112 Pa. 322; Commonwealth ex rel. v. Patton, 88 Pa. 258; Sample v. Pittsburgh, 212 Pa. 533.

OPINION BY MR. JUSTICE FOX, February 17, 1919:

This action was brought by the County of Philadelphia against James B. Sheehan, register of wills of said county, to recover commissions amounting to $103,148.74, allowed him by the Commonwealth as compensation for his services as its agent in the collection of the collateral inheritance tax during the three years ending January thirty-first, 1917. The Act of July 21, 1913, P. L. 878, provides that "hereafter the salary of register of wills, in every county of this Commonwealth containing a population of one million five hundred thousand and upwards, shall be ten thousand dollars a year," and that "the register of wills in said counties shall pay into the county treasury all fees or commissions of any kind earned by them, for services performed

either for the county or for the State or otherwise." It is under the provisions of this act that the County of Philadelphia claims that the compensation allowed Mr. Sheehan as register of wills should be paid into the county treasury and that he should be paid the salary fixed in the act at ten thousand dollars. Shortly after Mr. Sheehan assumed the duties of his office the question arose as to whether his compensation was to be governed by the terms of this act. The register of wills claimed that the act was unconstitutional, and that therefore he was not bound by its provisions. Negotiations with reference to the matter were had with the county treasurer of Philadelphia, and it was finally mutually arranged between the county treasurer and the register of wills that, until some proceedings should be had to test the constitutionality of the act, the sum to be paid him should be the amount fixed in the act and the register of wills should be paid on that basis, and that, pending the determination of the constitutionality of the act by the courts, the commissions received for the collection of the collateral inheritance tax should be deposited by the register of wills in a separate account and kept intact until the determination of the question. If the court should ultimately decide that the act was constitutional, the commissions were to be paid into the county treasury; if, however, the court should decide that the act was unconstitutional, the commissions were to be the property of the register of wills and the salary adjusted on the basis of the prior legislation.

The register of wills, the appellee, insists that the Act of July 21, 1913, is unconstitutional, and points to the provisions of Article III, Section 7, Clause 2, of the Constitution, "The General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts," and also Article III, Section 7, Clause 15, "The General Assembly shall not pass any local or special law creating offices, or prescribing the powers and duties

of officers in counties, cities, boroughs, townships, election or school districts," as the reason why this act offends the constitutional provisions and cannot be sustained. The Act of 1913 is unquestionably general in form, and on its face purports to be a general act. It is nevertheless conceded that it applies only to the County of Philadelphia, and that there will be no likelihood that in the near future at least, there is any other county in the State to which it will apply. It is, therefore, a local act under the guise of a general law, and this has uniformly met with condemnation by the courts. In Scowden's App., 96 Pa. 422, it was said of similar legislation: "It is special legislation under the attempted disguise of a general law. Of all forms of special legislation this is the most vicious."

These provisions of the Constitution of 1874 have been the subject of frequent consideration by this court, and particularly the question relating to classification. It has been held repeatedly that ex necessitate certain classifications will be allowed: Wheeler et al. v. Philadelphia et al., 77 Pa. 338; Kilgore v. Magee et al., 85 Pa. 401; but this permission to classify is not to be extended beyond certain limits, and where there is any indication that classification is purely artificial and without necessity it cannot be sustained. The cases with reference to classification are principally those relating to cities, but the same principle also governs legislation concerning affairs of counties. If the subject-matter of the act has no relation to the population of the counties, then the act will be construed to be local and special: Davis v. Clark, 106 Pa. 377. In Ayars' App., 122 Pa. 266, the act under consideration undertook to divide the cities of the State into seven classes instead of three, as had been done in Wheeler v. Philadelphia, supra. The legislature naturally assumed that if they could divide into three classes the cities of the State, they could divide them into seven classes, but the court in its opinion said: "On the contrary, the underlying principle of all the cases

is that classification, with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists, a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others." It cannot be said that there are any manifest peculiarities relating to the County of Philadelphia, in so far as they affect the compensation of the register of wills, to distinguish it from the other counties of the State. The provisions as to the compensation of the register of wills for the collection of a collateral inheritance tax is in the same category. It is difficult to apprehend why the commissions allowed the register of wills in Philadelphia County should go into the county treasury and that no such provision was either essential or necessary in the other counties of the State. It is easy to understand how in a populous city of a million and a half there may be provisions regulating the affairs of that municipality which are necessarily different from those of a small city. The regulation of the police force, fire protection, and the health administration and many of the countless activities of the municipality may be differentiated in the City of Philadelphia from those of the smaller cities of the State, and it is for this reason that courts have sustained classification of this character; but, if the court discovers that the classification is a mere pretext for the enactment of local or special legislation, the classification cannot be permitted, nor can the act be sustained. If there is no compelling necessity for the enactment of a law relating to a single county of the State, and it is obvious, as it is in this case, that it was passed for the sole purpose of evading the Constitution, it is the duty of the court to declare the act invalid.

It is unfortunate that in this particular case the act cannot be sustained. The learned judge of the court be-

low well said: "It is of course eminently desirable that the compensation of the register of wills of this county should be reduced to an amount bearing a more reasonable proportion to the actual labor and responsibility involved in the performance of his various functions than does the enormous revenue that its incumbent has derived from this office each year since 1891. But it is infinitely more important that the court should not, by closing its eyes to the unconstitutional methods resorted to for accomplishing that result, furnish to the legislative branch of our government a precedent that can serve only to encourage further disregard of the fundamental law": McCoach v. Sheehan, 25 Pa. Dist. Rep. 1119.

The learned counsel for the appellant insists that this is not an act regulating the affairs of the counties and therefore is not obnoxious to the constitutional inhibition, claiming that since the State in this matter is dealing with what is peculiarly its own affair, to wit, the collection of taxes for State purposes, the State may constitutionally regulate its own affairs, even if such regulation may affect other affairs than State affairs. Although plausible, this is fallacious. The legislation imposing the collateral inheritance tax and the acts relating to the compensation of the registers of wills for the collection of the former are not now under consideration. The Act of 1913, the act in question, is clearly an act regulating the affairs of counties. It fixes the salary of the register of wills in every county of the Commonwealth containing a population of one million five hundred thousand, and it requires the register of wills, who is a county officer, to pay into the "county treasury all fees and commissions of any kind earned for services performed either for the county or for the State or otherwise." People of the county are therefore obliged in the first instance to pay the salary of ten thousand dollars from their treasury, and, in the second instance, they are to get the benefit of the fund arising from the commissions allowed by the State on the collection of the collat-

eral inheritance tax. The learned counsel for appellant argues that the imposition of the tax or collection of the tax, or the entire one hundred per cent of all taxes collected, or what shall be done with such taxes, and what shall be paid for such services are all State affairs; and this is true, but it does not reach the point. The legislation relating to the salary of the register of wills and the receipt of his commissions by the County of Philadelphia is a county affair, and can be considered only a county affair, without reference to the State. The State derives no benefit from the act; the county does. We may therefore properly determine that the act is an act regulating the affairs of the county, and so if it is local or special it offends against the Constitution. It would serve no useful purpose to multiply the citation of authorities upon this point, but the cases of Morrison v. Bachert, 112 Pa. 322; Commonwealth ex rel. v. Patton, 88 Pa. 258; Sample v. Pittsburgh, 212 Pa. 533, and Commonwealth v. Schumaker, 255 Pa. 67, all sustain the view taken in this opinion. Inasmuch as we hold that the Act of 1913 is unconstitutional under Article III, Section 7, of the Constitution, it is unnecessary for us to discuss the question raised under Article III, Section 8.

One other question is presented for consideration. The appellant contends that the defendant is estopped from setting up the claim that the Act of 1913 is unconstitutional because he has accepted the benefits of the act in receiving the installments of salary paid him under the terms and provisions of the act. Were there nothing else in the case than this statement of fact, unquestionably he would be estopped. As we have already seen, this is not the precise situation. The register of wills proceeded with due caution. He at once asserted the unconstitutionality of the act, and entered into an agreement with the county treasurer, who was claiming these commissions, that, pending the determination of the constitutionality of the act by the courts, he should be paid his salary as fixed by the act, and that he would

segregate the commissions received by him in a separate account and pay them over or not, as the question of the constitutionality of the act might be finally determined. This is not a proper case for the application of the doctrine of estoppel or quasi estoppel, which perhaps is a more accurate term to use in this connection. Quasi estoppel includes the doctrine of election and is "the principle which precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him": 16 Cyc. 785. The learned judge of the court below submitted to the jury the question of fact as to whether any agreement was made between the register of wills and the county treasurer, and the jury found that such an agreement was made. Whether the county treasurer had authority to make such an agreement or not is beside the question. The register of wills, doubtless in good faith, made the agreement with the county treasurer, and it is assumed that if the courts had finally declared the act to be constitutional he would have adhered to his agreement. It would be grossly inequitable, therefore, under these circumstances to hold that, where he expressly reserved the question of the constitutionality of the act, he should be held estopped from asserting it because of the arrangement made with the county treasurer.

The assignments of error are not sustained, and the judgment is affirmed.

This opinion was adopted by the court when Mr. Justice Fox was still a member of it and is now filed as its action on the appeal.

Feb. 17, 1919. BROWN, C. J.