## Colonial Trust Co. v. Goldsmith

*C. Wilfred Conard*, for plaintiff.

*C. William Kraft, Jr.*, and *Thomas W. Maher*, for defendant.

ERVIN, J., April 21, 1943.—This is a rule for judgment for want of a sufficient affidavit of defense to a writ of scire facias to revive a judgment. The rule must be made absolute.

On October 23, 1937, plaintiff entered judgment against defendant on a bond and warrant accompanying a mortgage. At that time the Act of July 2, 1937, P. L. 2751, provided:

"That hereafter, before any éxecution shall issue against the mortgaged premises on the foreclosure of any mortgage, or on a judgment entered on any obligation secured by mortgage, the plaintiff or plaintiffs shall either— (1) file a statement in the court having jurisdiction over such execution, certifying, under oath, that he or they release and discharge the obligors and guarantors and any other parties liable, directly or indirectly, on the mortgage debt and the owners of the property affected thereby from all personal liability on the mortgage debt, interest, costs, taxes, and municipal claims; or (2) petition the court having jurisdiction to issue such execution to fix the fair market value of the property to be sold."

Plaintiff, contending that the said act was unconstitutional but not desiring to be delayed in its foreclosure proceedings, filed the following release:

"Release Under Act of July 2, 1937

State of Pennsylvania  ss.:
County of Philadelphia

G. B. Watton, being duly sworn according to law, deposes and says that he is assistant real estate officer

of the above-named plaintiff; that he is authorized to and does make this affidavit on its behalf and that in accordance with the provisions of the Act of July 2, 1937, he hereby certifies that The Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee under deed of trust from Florence Fox dated January 27, 1926, releases and discharges the obligors and guarantors and any other parties liable directly or indirectly on the mortgage debt evidenced by bond and mortgage dated August 7, 1925, Arthur Goldsmith to The Colonial Trust Company, recorded in Delaware County in Mortgage Book No. 725, page 427, and also the owner of the mortgaged premises 112 N. Highland Avenue, Lansdowne, Pa., from all personal liability on the mortgage debt, interest thereon and costs, taxes and municipal claims assessed against the mortgaged premises. This statement is filed because of the requirements of the Act of July 2, 1937, entitled 'An Act to protect the obligors or guarantors of bonds and mortgages and owners of property affected thereby and others, etc.' which act deponent believes to be unconstitutional and in the event that such act is so declared unconstitutional, then this release shall be inoperative, null, void and of no effect.

Sworn to and subscribed
  before me this 30th day
  of Oct. 1937

                    G. B. Watton

J. V. McCloskey
(Seal)     Notary Public
  My Com. exp. 5/11/40

I am not a director, officer or stockholder in the bank, banking institution or trust company for which I hereby act as notary public."

The mortgaged real estate was sold to plaintiff by the sheriff on December 1, 1937, for the sum of $1.

Subsequently, the Act of 1937, supra, was declared unconstitutional in the case of The Penna. Co., etc., et al., v. Scott et al., 329 Pa. 534, and still later. the Deficiency Judgments Act of July 16, 1941, P. L. 400, was passed, which provided for the filing of a petition to fix the fair value of property taken in execution before any subsequent execution could issue. The Act of 1941 was declared constitutional in the case of The Penna. Co., etc., v. Scott, 346 Pa. 13. On January 15, 1942, plaintiff filed a petition under the Act of 1941 and on June 3, 1942, the fair market value of the mortgaged premises was fixed at $6,675, without prejudice to any rights arising by reason of the release filed under the Act of 1937. Subsequently plaintiff filed a writ of scire facias to revive the judgment entered in 1937, to which defendant filed an affidavit of defense averring that by reason of the said release there was nothing due and owing by defendant. Plaintiff then took the present rule for judgment for want of a sufficient affidavit of defense. The question before us, therefore, is the validity and effect of a conditional release filed by plaintiff in accordance with the requirements of the Act of July 2, 1937, which act was subsequently held to be unconstitutional.

It is a general rule that "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void in toto is true also as to any part of an act which is found to be unconstitutional, and which, consequently, is to be regarded as having never, at any time, been possessed of any legal force": I Cooley's

Constitutional Limitations (8th ed.), 382. See also 16 C. J. S. 287 et seq., §101; 11 Am. Jur. 827 et seq., §148.

There are, however, certain recognized exceptions to this general rule, the principal one being that one who invokes the provisions of a statute cannot attack its constitutionality. This exception is based on waiver or estoppel. For a full discussion of these exceptions, see I Cooley's Constitutional Limitations (8th ed.), 368 et seq., and also 16 C. J. S. 182 et seq., §§89, 90, and 11 Am. Jur. 765 et seq., §§119, 124.

The question which we must consider is complicated by the fact that the release filed by plaintiff was not an absolute release but, by its own wording, stated that it was filed because of the requirements of the Act of July 2, 1937, "and in the event such act is so declared unconstitutional, then this release shall be inoperative, null, void and of no effect."

Did plaintiff have the right to attach such a condition to the release? Defendant contends that the condition is void and the release otherwise valid, while plaintiff contends that the release and condition are inseparable and that the whole paper is void.

The Act of 1937 was one of a series of acts by which the legislature attempted to relieve distressed mortgagors from the consequences of the decisions which held that the amount paid at a sheriff's sale was conclusive as to the value of the property sold at the said sale. The first act was that of January 17, 1934, P. L. 243, which was held unconstitutional in Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483. The next act was that of July 1, 1935, P. L. 503, which was also held unconstitutional in Home Owners' Loan Corp. v. Edwards et ux., 329 Pa. 529. The third act was the act now under consideration—the Act of July 2, 1937, P. L. 2751. The method provided in this act

differed from the methods used in the prior acts, but it was also held to be unconstitutional.

It was not until the Deficiency Judgments Act of July 16, 1941, P. L. 400, which was held to be constitutional, that the result sought for during all these years was finally accomplished.

The particular method set up by the Act of 1937 was to require plaintiff, before issuing any execution against mortgaged premises, either to file a release of the mortgagor and other parties interested or to have the fair value of the property attempted to be sold fixed before the sale. Although the result sought to be accomplished was equitable, nevertheless, as soon as the act was passed it was questionable whether or not it was not open to the same constitutional objections which had overthrown the preceding acts. In fact, this particular act went beyond the requirements of the preceding acts and required the plaintiff to make an election even before commencing foreclosure. Therefore, plaintiff in the present case was presented with a serious dilemma. There were at least five choices of action open to it.

1. It could file an unconditional release and proceed with its foreclosure immediately, but in that case, even if the act should later be declared to be unconstitutional, it would be confronted with the argument that it had not raised the constitutional question at the earliest opportunity.

2. It could issue a mandamus against the prothonotary to issue a writ of execution without the filing of a release. This was the procedure which was used in the case of The Penna. Co., etc., v. Scott, 346 Pa. 13, by which the act was declared unconstitutional, but such proceeding would result in a long delay before the foreclosure could be accomplished.

3. It could have refrained from commencing its foreclosure proceedings until after the constitutionality

of the act had been decided in some other case. That also would have delayed the foreclosure.

4. It could have entered into an agreement with defendant to permit the foreclosure to proceed and to abide the result of a decision in some other case as to the constitutionality of the act, but such an agreement would require the consent of the defendant, which it might not be able to obtain.

5. It could file a conditional release, the effect of which would be doubtful and would have to be decided at a later time. It was this method which plaintiff chose and the time is now ripe for a decision as to its validity.

We feel that plaintiff was justified under the circumstances in proceeding as it did. We can find no case of an ex parte conditional compliance with an act believed to be unconstitutional, but there appears to be no reason why such a method cannot be employed. Plaintiff was deceiving no one but was putting on the record the fact that it was attempting to comply with the act only because of the coercion imposed by the statute. The facts are somewhat similar to those in Philadelphia County v. Sheehan, 263 Pa. 449. In that case Sheehan was the Register of Wills of Philadelphia County. Prior to 1913 he had received a salary of $5,000 per annum and in addition certain commissions for the collection of inheritance taxes. The Act of July 21, 1913, P. L. 878, provided that thereafter the salary of the register of wills in a county of the size of Philadelphia should be $10,000 a year and that all commissions should be paid into the county treasury. Sheehan believed the act to be unconstitutional but, in order to protect himself during the time which would be consumed in receiving an interpretation of the act from the courts, he entered into an agreement with the county treasurer that, pending such decision, he should receive his salary under the new act and that if the

court should ultimately decide that the act was constitutional the commissions which he received would be then paid into the county treasury, but if the court should decide that the act was unconstitutional, his salary would be adjusted on the basis of prior legislation. The case eventually came before the Supreme Court and, in addtion to arguing the constitutionality of the act, the county also raised the question of estoppel because Sheehan had accepted the benefits of the act in receiving the increased salary during the pendency of the proceedings. On this phase of the case the Supreme Court said (p. 456) :

"The register of wills proceeded with due caution. He at once asserted the unconstitutionality of the act, and entered into an agreement with the county treasurer, who was claiming these commissions, that, pending the determination of the constitutionality of the act by the courts, he should be paid his salary as fixed by the act, and that he would segregate the commissions received by him in a separate account and pay them over or not, as the question of the constitutionality of the act might be finally determined. This is not a proper case for the application of the doctrine of estoppel or quasi estoppel, which perhaps is a more accurate term to use in this connection. Quasi estoppel includes the doctrine of election and is 'the principle which precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him': 16 Cyc. 785."

We believe that such ruling is applicable to the present case. Plaintiff is not asserting now a right inconsistent with the position previously taken by him. His position has been consistent throughout, namely, that the Act of 1937 was unconstitutional. It is true that in the Sheehan case there was an agreement entered into between the parties, while in the present case defendant was not consulted. Nevertheless, the condi-

tion was placed upon the record and, if defendant felt that plaintiff had no right to insert such a condition in the release, he could have raised the question at once by a motion to strike off the release and to stay proceedings. Therefore, we do not feel that the doctrine of estoppel applies in this case.

Neither do we believe that the doctrine of waiver is applicable. A waiver is the intentional relinquishment of a known right. We cannot hold that the action of plaintiff could be considered intentional when he was compelled to file the paper by reason of the mandatory requirements of the statute. In the case of City of Cleveland v. Clements Bros. Construction Co., 65 N. E. 885 (Ohio 1902), it was held that where a statute peremptorily requires certain stipulations or agreements to be inserted in a contract, and the same are, by force of such statute, and because of its provisions, inserted by the contracting parties in their contract, the obligatory and binding force of such stipulations and agreements so inserted depends upon the validity of the statute requiring their insertion; and where such statute is itself unconstitutional such stipulations and agreements, although incorporated in the contract, are in law without any obligatory or binding force upon the parties to said contract. Furthermore, we do not believe that this was an invoking of a statute within the rule which we have previously mentioned that one who invokes the provisions of a statute cannot later attack its constitutionality. The Act of 1937 did not set up a new method of foreclosure so as to give plaintiff a choice of invoking it, with the conditions thereto attached, or of invoking some other method of foreclosure. It was attaching conditions to a previously-existing method of foreclosure. If the only method for foreclosing prior to 1937 had been by a bill in equity, for example, and if the Act of 1937 created an entirely new method of foreclosure, then it clearly could have

been said that plaintiff had a choice and if it invoked the new procedure it would have to do so with the conditions attached thereto, but in the present case plaintiff was given no such choice. The conditions were attached to a method of foreclosure which was already in existence and it was that method which plaintiff was invoking.

We feel that the present situation is analogous to the cases involving the payment of a tax under protest, where it has been uniformly held that the payment in such a manner is not a waiver of the constitutionality of the act imposing the tax.

Furthermore, we believe that the equities in this case are with plaintiff. Defendant was not harmed. It was argued that plaintiff was able to obtain its foreclosure immediately and that this was the consideration for the filing of the release, but, the act being subsequently declared unconstitutional, it follows that plaintiff was entitled to its immediate foreclosure in any event. It also appears on the record that defendant has been allowed the fair value of the property by appropriate proceedings taken under the Act of 1941, supra. The facts as brought out in this case give a very good example of why the Act of 1937 was unconstitutional, while the Act of 1941 was not. Under the provisions of the Act of 1937 plaintiff would have been required to release defendant from all further liability and would have to take the mortgaged property in full satisfaction of the debt, whereas it was subsequently shown that the property was worth only $6,675, to be applied against a debt of $9,795. We feel it is only just that plaintiff should be permitted to revive its judgment so as to be in a position to collect the balance, if it is able to do so.